IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, ) | | |
| a Washington corporation, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | | 3:04-cv-353 |
| ) | | |
| SAMUEL SELLERS, an individual ) | | |
| d/b/a SAVE MORE SALES a/k/a SAVE ) | | |
| MORE COMPUTERS, and SAMUEL ) | | |
| SELLERS, an individual, ) | | |
|     Defendants. ) | | |

## MEMORANDUM OPINION

Plaintiff, Microsoft Corporation (Microsoft), has moved the court for summary judgment in its favor against defendants, Samuel Sellers (Sellers), an individual d/b/a Save More Sales a/k/a Save More Computers (Save More)[ECF # 21]. Microsoft further seeks a permanent injunction to prohibit defendants from engaging in any further unauthorized and/or infringing activities [ECF # 30]. Defendants, Sellers and Save More, have responded [ECF # 35]. Plaintiff has replied [ECF # 37]. For the reasons that follow, plaintiff's motions for summary judgment and a permanent injunction are **GRANTED**.

## BACKGROUND

Microsoft develops, advertises, distributes and licenses computer software programs. Microsoft software is distributed in all fifty states of the United States and

throughout the world. Sellers owns and operates Save More, a business primarily engaged in buying largely salvaged goods from retail stores. Among other business activities, Save More builds computer systems, some of which are sold with Microsoft software installed onto the hard disk drives. Sellers, and to a lesser extent his brother, Virgil Sellers, Jr. (brother), are responsible for purchasing products to be sold by Save More. Defendants assert that they bought salvaged goods from such establishments as WalMart, Circuit City and similar stores, and among these items would be some computers and packaged software. Sellers' brother would build certain computer systems sold by Save More, and either Sellers or his brother would install Microsoft software onto those computers. Defendants also would repair the salvaged computers they purchased and sell them individually. They assert that these computers would have software already installed and that they sold them with the same installed software. On other occasions, Sellers would either install a software program obtained as part of the purchased salvaged goods or he would purchase software to install. Defendants claim that they sold approximately 33 computers, some with the software installed.

Sellers is responsible for the overall operation of the business, and oversees the day-to-day operations of Save More. He receives compensation from Save More, which is his sole source of income, and acknowledges the company's success is directly related to his own finances. Defendants do not dispute that they distributed infringing copies of Microsoft software despite notice from Microsoft of their unlawful activities.

However, defendants suggest that they should not be held liable for their actions because they did not intentionally infringe Microsoft's copyrights and trademarks.

It is clear that defendants infringed Microsoft's intellectual property rights by installing unauthorized copies of Microsoft software programs onto the hard drives of the computers they sold. Defendants' unauthorized copying of Microsoft software programs onto the computer systems they distributed constitutes a copyright violation, because Microsoft has the exclusive right to reproduce or authorize reproduction of its copyrighted works.[1] *See* 17 U.S.C. § 106(1)-(3); *see generally Microsoft Corp. v. Computer Warehouse*, 83 F.Supp.2d 256, 262 (D. Puerto Rico 2000)(noting that installing software on the hard drive of a computer without authorization constitutes illegal copying). As noted by plaintiff, Microsoft packages and distributes its software programs together with associated user manuals, certificates of authenticity (COAs), end user license agreements (EULAs), and other documentation. To help ensure that computer systems dealers, like defendants, are distributing authorized copies of Microsoft software on their computers, Microsoft requires that any installed copy of a software program be distributed with a corresponding authorized Microsoft CD-ROM containing the program and other components. This helps to prevent would-be infringers from taking one CD-ROM of Microsoft software, which was licensed for use on only a single computer, and copying it onto numerous systems that they then sell to

---

[1] Microsoft Windows 2000 Professional (Copyright Registration No. TX 5-036-267); Microsoft Windows XP Professional (Copyright Registration No. TX 5-407-055).

3

customers. This practice is commonly called "hard disk loading," and is analogous to taking one music CD, making numerous copies, and then selling those bootleg copies.

Defendants in this case are not authorized to copy and distribute Microsoft software programs on computer systems without also obtaining and distributing the appropriate CD-ROMs and other components corresponding to those programs. Nevertheless, on or about July 28, 2003, defendants distributed to an investigator a computer system that had an unauthorized and infringing copy of Microsoft Windows XP Professional (Windows XP Pro) copied on the hard disk drive. The computer system was not distributed with the requisite legitimate Microsoft Windows XP Pro CD-ROM, COA, EULA or manual.

By letter dated September 29, 2003, Microsoft notified defendants that they had infringed Microsoft's copyrights and trademarks[2] by distributing an unauthorized copy of Microsoft software installed on a computer hard drive, and asked defendants to cease their infringing conduct. Microsoft informed defendants that they must distribute to their customers a complete authorized package of software, including the requisite CD-ROM,

---

[2]Trademark and Service Mark Registration No. 1,200,236 ("MICROSOFT") for computer programs and computer programming services; Trademark Registration No. 1,256,083 ("MICROSOFT") for computer hardware and software manuals, newsletters and computer documentation; Trademark Registration No. 1,872,264 ("WINDOWS") for computer programs and manuals sold as a unit; Trademark Registration No. 1,815,340 (COLORED WINDOWS FLAG LOGO) for computers, computer peripherals, and computer programs and manuals sold as a unit; and Trademark Registration No. 1,816,354 (WINDOWS FLAG LOGO) for computers, computer peripherals, and computer programs and manuals sold as a unit.

for each Microsoft program that they install on computer systems. Microsoft also referred defendants to information on assured sources of genuine Microsoft software and Microsoft's efforts to combat software piracy. However, in March 2004, defendants again distributed to an investigator three computer systems with unauthorized copies of Microsoft Windows 2000 Professional (Windows 2000 Pro) software installed on the hard drives. The computer systems were not distributed with the requisite legitimate Microsoft Windows 2000 Pro CD-ROMs.

It appears that defendants had known for several years that their methods of distributing Microsoft software were potentially illegal. By letter dated January 14, 2000, Microsoft had notified defendants that they had distributed Microsoft software in an unauthorized and illegitimate manner. At that time, Microsoft referred defendants to information on the proper distribution of Microsoft software and the topic of software piracy. Sellers even contacted Microsoft to learn about the "rules" for distributing computers with Microsoft software installed, but then disregarded the information provided by the Microsoft representative as being "ridiculous" and concluded that he "can sell it if [he] want[s] to" [Sellers' Deposition at 51:21 to 53:16].

From a review of the record, it is apparent that defendants acquired and redistributed suspect Microsoft components without investigating their origin or legitimacy. Defendants did not question whether their vendors were authorized distributors of Microsoft software. Despite the availability of genuine Microsoft items from authorized distributors, defendants chose to deal primarily in purported Microsoft

5

software components of unknown origin that they acquired from other sources, including vendors that were "liquidators" or companies that defendants located on an Internet bulletin board that allowed vendors to compete with each to offer the lowest price. Defendants admit that profit was more important to them than distributing authorized and non-infringing Microsoft software, so they used unauthorized vendors that offered cheaper prices. After Sellers contacted Microsoft to find out how best to acquire Microsoft software, he decided to acquire purported software from unauthorized vendors: "So I'm like why buy from Microsoft when other people are selling it cheaper" [Sellers Deposition at 51:7-8]. He admits that pricing was the sole factor in determining his suppliers of Microsoft software [Sellers' Deposition at 84:5-8].

Defendants' use of suspect vendors led them to traffic in illicit Microsoft items. They acquired stand-alone purported Microsoft COAs without the corresponding software programs. The legitimate function of a COA is to enable a customer to verify whether he has obtained genuine Microsoft software. There is no legitimate reason to distribute a COA separate from the software program it was intended to authenticate.[3] The acquisition or distribution of COAs without any accompanying hardware or software is a marker of involvement in infringing activities, because someone in the distribution chain may fraudulently combine the COAs with infringing items to pass them off as

---

[3] 18 U.S.C. § 2318 was recently amended to make it illegal to knowingly traffic in illicit COAs. An illicit COA is a genuine COA that is distributed or intended for distribution without the copy of software that Microsoft meant for it to accompany, including stand-alone COAs at issue here. Persons who traffic in stand-alone COAs in violation of § 2318 may face criminal penalties, including fines and imprisonment for up to five years.

genuine. Sellers knew that his business was acquiring stand-alone COAs without the accompanying programs, yet did nothing to cease such conduct.

Defendants' conduct demonstrates that "[d]efendants at least acted with reckless disregard for Microsoft's intellectual property rights, and more likely acted with full knowledge that [they were] eager and willing participant[s] in infringing activities." *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp. 2d, 800, 809 (E.D. Mich. 2000) (holding that the acquisition of stand-alone COAs and having notice of infringement demonstrated defendants' willful blindness and liability for copyright and trademark infringement).

Plaintiff asserts defendants failed to maintain complete business records. Thus, Microsoft cannot determine how many computers with likely infringing copies of software were actually distributed. While defendants estimate that Save More built and sold approximately 33 computer systems since 2002, plaintiff claims the "estimates" are inaccurate and unreliable. Plaintiff asserts that where, as here, defendants have concealed information regarding the scale of infringement, the court may draw reasonable inferences from the evidence available, and any uncertainty should be resolved against the defendants. *See Levi Strauss & Co. v. Sunrise International Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (evidence of two infringing jeans and documents showing other illegal transactions sufficient to show "an illicit enterprise involving numerous transactions to manufacture and sell [infringing] ... products"). Further, plaintiff contends incomplete documentation may be addressed with a

significant statutory damages award. *Yurman Design, Inc. v. PAJ, Inc.*, 93 F.Supp.2d 449, 462 (S.D.N.Y. 2000).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where, as here, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Cases such as this one, where there is no dispute that defendants engaged in the infringing activity, are particularly well suited for summary judgment. *See, e.g., Compusource*, 115 F.Supp at 812; *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1094 (D.Md. 1995).

**COPYRIGHT ACT**

The Copyright Act gives the copyright owner the exclusive right to reproduce a copyrighted work and to distribute copies of the work. *See* 17 U.S.C. § 106(1)-(3). To establish a claim for copyright infringement, Microsoft must show only (1) that it owns valid copyrights in the works at issue, and (2) that defendants encroached upon Microsoft's exclusive rights as a copyright holder. *See* 17 U.S.C. § 501; *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991); *Sega Enters. v. MAPHIA*, 948 F.Supp. 923, 931 (N.D. Cal. 1996). Defendants' knowledge or intent is irrelevant to their liability for copyright infringement.

*See* 17 U.S.C. § 501(a); *Buck v. Jewell-LaSalle Realty Co.*, 283 U.S. 191, 198-99, 51 S.Ct. 410, 412 (1931); *Grey Computer*, 910 F.Supp. at 1083.

In this case, there is no dispute as to either of the elements needed to establish defendants' liability: (1) Microsoft owns the copyrights in Windows XP Pro and Windows 2000 Pro and (2) defendants dealt in unauthorized and infringing copies of those copyrighted works. The registration certificates provided by Microsoft are *prima facie* evidence of Microsoft's ownership of valid copyrights, *see* 17 U.S.C. § 410(c). Having undisputedly trafficked in infringing and unauthorized copies of programs in which Microsoft holds valid copyrights, defendants have infringed Microsoft's exclusive rights under the Copyright Act; accordingly, they are liable as a matter of law for copyright infringement. *See Compusource*, 115 F.Supp.2d at 805; *Grey Computer*, 910 F.Supp. at 1085.

**LANHAM ACT**

Defendants also have clearly infringed the trademarks and service mark covering Microsoft software in violation of the Lanham Act, 15 U.S.C. § 1114, *et seq.* A party establishes trademark infringement by showing (1) that it owns a trademark, and (2) that the infringer (a) used the mark without authorization; (b) in commerce; (c) in a manner likely to create consumer confusion. *See* 15 U.S.C. § 1114(1)(a); *Grey Computer*, 910 F.Supp. at 1085-86. As with copyright infringement, it is not necessary for Microsoft to prove that defendants knowingly or intentionally infringed its marks in order for Microsoft

to recover for trademark infringement. *See* 15 U.S.C. § 1117(c); *Grey Computer*, 910 F.Supp. at 1086.

The undisputed evidence establishes each of the required elements. First, Microsoft has registered each of the marks at issue in the United States Patent and Trademark Office on the Principal Register, constituting *prima* evidence of the validity of the trademarks, as well as of the facts stated in the relevant registration certificates. 15 U.S.C. § 1057(b); *Brittingham v. Jenkins*, 914 F.2d 447, 452 (4th Cir. 1990); *Grey Computer*, 910 F.Supp. at 1086. Further, these registrations are *prima facie* evidence of Microsoft's exclusive right to the use of the marks for purposes of 15 U.S.C. § 1114(1). *See* 15 U.S.C. §1057(b); *Brittingham*, 914 F.2d at 452. Second, it is undisputed that defendants trafficked in unauthorized and infringing copies of Microsoft software containing the marks at issue, satisfying the "in commerce" requirement of the Lanham Act. *See Grey Computer*, 910 F.Supp. at 1086-87 (where the plaintiff is a corporation doing business in numerous states, the case law effectively presumes that even defendant's intrastate activities have a substantial effect on interstate commerce). Lastly, the likelihood of consumer confusion is indisputable in cases involving the distribution of unauthorized and infringing items such as Microsoft's marks, which are recognized worldwide. Under the circumstances of this case, consumers were sure to be confused as to the true source of the items being distributed. *See Compusource*, 115 F.Supp.2d at 807; *Grey Computer*, 910 F.Supp. at 1088. "Where ... one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."

*Procter & Gamble*, 123 F.Supp.2d at 115 (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987); *see also WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 44 (1st Cir. 1991) ("Cases where a defendant uses an identical mark on competitive goods ... are 'open and shut'..." (quoting 2 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.3 at 56 (1991 ed.)); *Sega Enters. v. MAPHIA*, 948 F.Supp. at 938-39 (finding trademark infringement where the goods bearing the mark at issue "were distributed in an unauthorized manner and were not subject to [the trademark holder's] quality controls"). Accordingly, because Microsoft has established each of the elements of trademark infringement, it is entitled to summary judgment under § 1114 of the Lanham Act..

The same distributions of unauthorized and infringing copies of Microsoft software also establish that defendants have violated § 1125(a) of the Lanham Act by falsely designating the origin of the software that they distributed. *See Grey Computer*, 910 F.Supp. at 1089 ("Defendants' use of Microsoft's marks in connection with unauthorized products falsely implies or represents Microsoft's sponsorship and approval of these products"); *see also Compusource*, 115 F.Supp.2d at 807 (holding defendant liable for false designation of origin based on the distribution of counterfeit Microsoft software). Thus, plaintiff is entitled to summary judgment under § 1125(a) of the Lanham Act.

**TENNESSEE CONSUMER PROTECTION ACT**

Likelihood of customer confusion is the essence of the test for a violation of the Tennessee Consumer Protection Act. *McDonald's Corp. v. Shop at Home, Inc.*, 82 F.Supp.2d 801, 816 (M.D. Tenn. 2000). As noted previously, defendants cannot dispute that their unauthorized use of Microsoft's trademarks also incurs liability for violating the Tennessee Consumer Protection Act.

**PERSONAL LIABILITY - SELLERS**

As noted by Microsoft, "[i]t is well settled that 'one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing activity of another, may be held liable as a "contributory" [copyright] infringer.'" *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984). Further, an individual may be held vicariously liable for copyright infringement if he or she "'ha[d] the right and ability to supervise the infringing activity and also ha[d] a direct financial interest in such activities.'" *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996). An individual can be held vicariously liable even if he was ignorant of the infringement. *Superhype Publishing, Inc. v. Vasilou*, 838 F.Supp. 1220, 1225 (S.D. Ohio 1993).

In this case, Sellers is the sole owner of the company and was responsible for the overall operation of the business and its day to day operations. He purchased products to be sold by Save More, including purported Microsoft software and COAs, and he installed the software on the computers that Save More built. Also, Sellers receives compensation from Save More, which is his only source of income. Thus, he

12

must bear personal liability for the infringing conduct, because he clearly had the right and ability to supervise and had a direct financial interest in the activities. *See Fonovisa*, 76 F.3d at 262. It appears clear to this court that Sellers personally authorized and participated in the infringing activity. He was the primary, if not sole, moving force behind the illegal acts of the business. He also failed, as the owner of the company, to alter Save More's business practices to avoid continued infringement. Accordingly, under applicable law, Sellers is individually liable for trademark infringement.

**DAMAGES**

Both the Copyright Act and the Lanham Act allow a successful plaintiff to elect to recover an award of specified statutory damages. Alternatively, a successful plaintiff can elect to recover damages calculated by its actual losses and the defendant's profits. *See* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a). Actual damages will be trebled upon a finding of willful infringement. 15 U.S.C. § 1117(b). A copyright owner may elect, at any time before final judgment is rendered, to recover "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c). Similarly, in cases involving use of a counterfeit mark, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages of up to $100,000 per trademark infringed, enhanced to up to $1,000,000 per mark if the infringement is willful. *See* 15 U.S.C. § 1117(c).

Plaintiff notes that the option of electing statutory damages is appropriate, particularly in cases such as this one, because the information needed to establish an exact measure of actual damages is within the infringers' control and often is not fully disclosed.  *See Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996) (noting that a plaintiff may recover statutory damages whether or not there is adequate evidence of actual damages), *cert. denied*, 519 U.S. 809, 117 S.Ct. 53; *Yurman Design, Inc. v. PAJ, Inc.*, 93 F.Supp.2d 449, 462 (S.D.N.Y. 2000) ("Statutory damages have been made available to plaintiffs in infringement actions precisely because of the difficulties inherent in proving actual damages and profits, as well as to encourage vigorous enforcement of the copyright laws").  In fact, courts have held that a successful plaintiff in a copyright and/or trademark infringement case is entitled to recover enhanced statutory damages even where there are no actual damages or only nominal damages.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 (7th Cir. 1994).

Importantly, the prevailing plaintiff is entitled to recover separate awards of statutory damages under both statutes when a defendant has infringed both its trademarks and copyrights.  Separate awards are appropriate because the Lanham Act and the Copyright Act provide separate remedies for the two distinct injuries and serve different public policies.  *See Microsoft Corp. v. Tierra Computer, Inc.*, 184 F.Supp.2d 1329, 1331 (N.D. Ga. 2001); *Nintendo of Am., Inc. v. Dragon Pac., Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (a defendant commits "two wrongs" when his actions violate both

14

the Copyright Act and the Lanham Act; to "effectuate the purposes of both statutes, damages may be awarded under both"), *aff'd*, 51 F.3d 281 (9th Cir. 1995); *Compusource*, 115 F.Supp.2d at 811.

In this case, Microsoft seeks only the maximum amount of statutory damages for non-willful infringement. Specifically, Microsoft seeks statutory damages of $100,000 for each of its four trademarks at issue and $30,0000 for its two copyrights at issue, for a total of $460,000. The court finds that given defendants' repeated infringement of Microsoft's intellectual property rights for financial gain, an award of statutory damages equal to the maximum amount available for non-willful infringement is entirely reasonable and appropriate. *See Compusource*, 115 F.Supp.2d 800. Defendants had been informed by Microsoft that they were dealing in infringing Microsoft software. Nevertheless, they persisted in their conduct, acting in reckless disregard for Microsoft's intellectual property rights.

It is undisputed that defendants, by their unauthorized distribution of Microsoft's trademarks and service mark in commerce and in connection with Microsoft Windows 2000 Professional and Microsoft Windows XP Professional software, have infringed the trademarks, service mark, and copyrights owned by Microsoft. Defendants' use of Microsoft's marks has resulted in the placement in commerce of counterfeit software programs that are strikingly similar to genuine Microsoft, or Microsoft-licensed, programs that are or were likely to cause confusion, mistake or deception in the market as to the source of those items. Although defendants received written notification from

15

Microsoft that they were distributing infringing copies of Microsoft software in contravention of Microsoft's intellectual property rights, defendants blatantly continued their illicit conduct. The law requires that defendants be held liable for their distribution of infringing Microsoft software, regardless of whether their conduct was intentional or willful. Plaintiff is entitled to judgment as a matter of law as to defendants' liability for copyright and trademark infringement, false designation of origin, and unfair competition. Further, defendants' distribution of unauthorized and infringing copies of Microsoft software constitute violations of the Tennessee Consumer Protection Act.

The court additionally finds that Sellers personally participated in Save More's infringing conduct. He had both the right and the ability to supervise the infringing activity and received a financial benefit from such activity. He is personally liable under the federal copyright and trademark laws for infringement of Microsoft's intellectual property rights. 17 U.S.C. § 101 *et seq.*; 15 U.S.C. § 1051 *et seq.*

Because the court has found that defendants infringed Microsoft's copyrights, trademarks and service mark, Microsoft is hereby awarded $60,000 in statutory damages under the Copyright Act and $400,000 in statutory damages under the Lanham Act, for a total of $460,000.

**ATTORNEYS' FEES AND COSTS**

Microsoft also seeks costs and attorneys' fees in an amount to be determined after ruling on this motion for summary judgment. Courts have routinely held that the

16

award of full costs under the copyright act is mandatory.  See *Milene Music, Inc. v. Gotauco,* 551 F. Supp.1288, 1297 (D.R.I. 1982); *Microsoft Corporation v. Compusource Distributors, Inc.,* 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000).  In addition, as pointed out by the District Court for the Eastern District of Michigan in *Microsoft Corp. v. Compusource Distributors, Inc., supra,* in cases similar to the one at bar, courts have awarded attorneys' fees and costs against software distributors who have willfully infringed copyrights and trademarks.  Accordingly, the court will award Microsoft attorneys' fees and costs, but will take the amount of the award under advisement pending further submissions from the parties on the specific fees and costs.  Such submissions must be filed by the plaintiff Microsoft within 14 days from receipt of this memorandum and order.   Thereafter, defendants may file a response within 14 days from the filing of plaintiff's submissions if it wishes to challenge any fees or costs.

**PERMANENT INJUNCTION**

The likelihood of confusion that existed in this instance by virtue of defendants' distribution of unauthorized and infringing copies of Microsoft software in interstate commerce is an appropriate predicate upon which to base permanent injunctive relief against the unauthorized reproduction, replication and/or distribution by defendants of any unauthorized, illegal, infringing, and/or counterfeit Microsoft items.  Accordingly, for good cause shown, it is hereby **ORDERED** that defendants, their agents, servants, employees, representatives, successors and assigns, and all those persons or entities

17

acting in concert or participation with them, shall be and hereby are **PERMANENTLY ENJOINED** and restrained from:

(a) imitating, copying, or making any other infringing use or infringing distribution of software programs, components, EULAs or items protected by Microsoft's registered trademarks and service mark, including, but not limited to, the following Trademark and/or Service Mark Registration Numbers:

(1) 1,256,083 ("MICROSOFT");

(2) 1,200,236 ("MICROSOFT");

(3) 1,872,264 ("WINDOWS");

(4) 1,815,350 (COLORED WINDOWS LOGO); and

(5) 1,816,354 (WINDOWS FLAG LOGO);

or the software programs, components, EULAs, items or things protected by the following Certificate of Copyright Registration Nos.:

(1) TX 5-407-055 (Microsoft Windows XP Professional); and

(2) TX 5-036-267 (Microsoft Windows 2000 Professional); or any other works now or hereafter protected by any of Microsoft's trademarks or copyrights;

(b) manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any software program, component, EULA, item or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered

18

trademarks or service mark, including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above;

(c) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service mark including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above, in connection with the manufacture, distribution, offering for distribution, sale, offering for sale, advertisement, promotion, or display of any software, component, EULA, item or thing not authorized or licensed by Microsoft;

(d) using any false designation of origin or false description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, EULA, item, or thing that has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact;

(e) using the names, logos, or other variations thereof of any of Microsoft's copyright and/or trademark-protected software programs in any of defendants' trade or corporate names;

(f) engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or

right to use or to exploit these trademarks, service mark, and/or copyrights; or constituting any dilution of Microsoft's name, reputation, or goodwill; and

(g) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) through (f) above.

**ORDER TO FOLLOW.**

          **ENTER:**

          **s/Thomas W. Phillips**
          **UNITED STATES DISTRICT JUDGE**